IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAQUEISHA WINTRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-585-CFC-EGT |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Laquiesha Wintres ("Plaintiff") appeals *pro se* from an unfavorable decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability benefits.[1] (D.I. 2). This Court has jurisdiction under 42 U.S.C. § 405(g). Presently before the Court are cross-motions for summary judgment filed by the parties. (*See* D.I. 9 & 11). For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED, the Commissioner's motion be DENIED and the case be REMANDED for further proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Procedural History

On March 25, 2022, Plaintiff filed for disability benefits with the Social Security Administration ("SSA"), alleging a disability onset date of June 7, 2021. (Tr. at 11).[2] Her application was denied initially and upon reconsideration. (*Id.*). A telephonic hearing was held

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Frank Bisignano is automatically substituted for Acting Commissioner Leland Dudek as the Defendant.

[2]    Citations to "Tr." are to the Transcript of Social Security Proceedings filed in this case. (*See* D.I. 7). Page numbers are found in the lower righthand corner of the transcript.

on October 22, 2024 before Administrative Law Judge ("ALJ") Anthony Reeves.  (*Id.* at 32).

Plaintiff's date of last insured for disability benefits is September 30, 2026.  (*Id.* at 11).  The ALJ

issued a decision on December 10, 2024, denying benefits on the basis that Plaintiff was not

disabled during the relevant time period.  (*Id.* at 11-25).  On March 14, 2025, the Appeals Council

denied Plaintiff's request for review of the ALJ's denial decision, thus rendering the ALJ's

decision the final decision of the Commissioner.  (*Id.* at 1-3).

Plaintiff appealed *pro se* to this Court on May 12, 2025.  (D.I. 2).  Proceeding *in forma*

*pauperis*, Plaintiff filed her motion for summary judgment on August 7, 2025 (D.I. 9), and the

Commissioner filed his cross-motion for summary judgment on September 8, 2025 (D.I. 11 & 12).

Plaintiff did not file a reply brief.

### B.    Medical and Work History

As of her date of disability onset (June 7, 2021), Plaintiff was 30 years old.  (Tr. at 66).

She was first diagnosed with type 2 diabetes in 2011.  (*Id.* at 1776).  Seven years later, Plaintiff

got into a car accident that caused severe chronic back pain.  (*Id.* at 1777).  MRI imaging on her

spine in 2023 revealed that her L3-L4 spine has moderate right lateral disc bulging and her C3-C6

spine has minimal posterior disc bulging.  (*Id.* at 1615-18).  Plaintiff has previously received

steroid injections to limit the pain associated with the disc bulging.  (*See id.* at 1673).  She has

walked with an intermittent limp.  (*See id.* at 68 & 1755).  Plaintiff also has a history of carpal

tunnel syndrome in all four extremities.  (*Id.* at 3068).

Plaintiff has been diagnosed with depression, anxiety, and post-traumatic stress disorder

("PTSD").  (*See id.* at 1817).  She previously stopped taking her antidepressant after experiencing

significant weight gain.  (*Id.* at 1822).  She is currently morbidly obese (*id.* at 1569) and has high

blood pressure (*id.* at 1224) and various other impairments (*see id.* at 14).

2

Plaintiff has at least a high school education.  (*Id.* at 50).  She previously attended – but never finished – cosmetology training.  (*Id.* at 51).  And although she did finish pharmacy technician training, Plaintiff never became certified as a pharmacy technician.  (*Id.*).  In the past five years, Plaintiff has had brief stints at various jobs, such as a "home health aide" to her aunt, grocery store cashier, housekeeper and Door Dash driver.  (*Id.* at 47-50 & 172).

**C.      The ALJ Proceedings and Findings**

On December 10, 2024, the ALJ issued a decision denying Plaintiff benefits, concluding that Plaintiff was not under a qualifying disability at any time between the alleged onset date through the date of the decision.  (Tr. at 11 & 25).  In doing so, the ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4).  The ALJ first found that Plaintiff had not engaged in substantial gainful activity during the relevant time (step one) and that Plaintiff had severe impairments (step two) in the form of "diabetes; morbid obesity; degenerative disc disease cervical; degenerative disc disease lumbar." (*Id.* at 13-14).  The ALJ found that Plaintiff's remaining physical impairments were non-severe because they were either sufficiently treatable, had not persistent for the required twelve-month period, or were not adequately supported by medical evidence – those impairments being "asthma; hypertension; hypercholesterolemia; eczema; carpal tunnel syndrome; [and] sleep apnea."  (*Id.* at 14).  The ALJ specifically found that there was no medical evidence of an impairment that would cause Plaintiff's claimed knee and back pain.  (*Id.* at 17).

Furthermore, the ALJ found that Plaintiff's mental impairments of depressive disorder and PTSD were non-severe because they do not "more than minimal[ly] limit[]" Plaintiff's ability to perform mental work.  (*Id.* at 14-17).  In making that determination, the ALJ reviewed the mental

3

examination of Dr. Joseph Wieliczko and the opinion of Dr. Penelope Pitts and considered the four Paragraph B functional criteria for mental ability of Subpart P of 20 C.F.R. Part 404. (*Id.*).

None of Plaintiff's impairments met the severity of those listed in Subpart P of 20 C.F.R. Part 404 (step three). (*Id.* at 18-19). Plaintiff was then found to possess the residual functional capacity to perform certain light work but to lack any relevant past work (step four). (*Id.* at 19-23 & 28). Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that there existed jobs in significant numbers in the national economy that Plaintiff can perform (step five). (*Id.* at 24-25). The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Social Security Act between the alleged onset date, June 7, 2021, through the date of his decision, December 10, 2024. (*Id.* at 25). The ALJ's decision is now the Commissioner's final decision. (*Id.* at 1).

## II.    LEGAL STANDARD

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if the court would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. § 416.920(a)(4)(i)-(v). The Third Circuit has explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (internal citations omitted).

The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

**III.   DISCUSSION**

Plaintiff's opening brief is roughly a page-and-a-half that recounts her medical conditions, her financial struggles, and her desire to adequately care for her daughter.   (*See* D.I. 9). Specifically, Plaintiff mentions her diabetes, hypertension, high cholesterol, sleep apnea, asthma, chronic pain from bulging discs in her spine, sciatica, and carpal tunnel, as well as PTSD, bipolar depression and anxiety. (*Id.* at 1-2). Plaintiff stresses she does not "need a pity party" but that the public assistance she receives is insufficient to support her family and that she can no longer work enough to pay her bills due to her many medical conditions. (*Id.*). Attached to Plaintiff's brief is what appears to be discharge paperwork from a hospital visit in July 2025. (*See* D.I. 9, Ex. 1).

Plaintiff's brief contains no citations to the record or case law, and Plaintiff provides no explanation of how the ALJ was wrong. Liberally construed, Plaintiff at most argues that the residual functional capacity determination was wrong and that no job exists that could accommodate the modifications necessary for her to work. (*See* D.I. 9 at 2) ("There is not a job that could accommodate my modifications for me to be able to work so I will not fully stiff up or go numb."). Plaintiff also does not explain how the 2025 discharge paperwork is relevant to her appeal. The Commissioner filed a cross-motion for summary judgment seeking affirmance of the ALJ's decision. (D.I. 13). Plaintiff did not respond to the Commissioner's motion.

As an initial matter, Plaintiff's brief fails to comply with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which provides that social security actions are "presented for decision by the parties' briefs," the latter of which "must support assertions of fact by citations to particular parts of the record." Although even *pro se* litigants "cannot flout procedural rules," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013), the Court will nonetheless liberally construe Plaintiff's papers. *See Erikson v. Pardus*, 551 U.S. 89, 94

(2007). Under such a liberal reading, the Court understands Plaintiff's appeal to be arguing that (1) the ALJ's determination of Plaintiff's residual functional capacity was not supported by substantial evidence and (2) the ALJ's evaluation of the vocational expert ("VE") opinion evidence was not supported by substantial evidence.[3]

### A.    Plaintiff's New Attached Evidence

Before the Court addresses Plaintiff's arguments, the Court must decide whether to consider the discharge report Plaintiff submits with her appeal. *See Matthews v. Apfel*, 239 F.3d 589, 592-94 (3d Cir. 2001). The report stems from Plaintiff's visit to TidalHealth in Seaford, Delaware on July 20, 2025. (*See* D.I. 9, Ex. 1 at 1). The Court will liberally construe this attachment as Plaintiff requesting a remand under 42 U.S.C. § 405(g) (Sentence Six). Under § 405(g), remand is only warranted if the plaintiff shows that the evidence submitted with the appeal is both new and material and that the plaintiff has good cause for why the evidence was not submitted to the ALJ. *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Because the discharge paperwork post-dates the administrative hearing, it is necessarily "new" because it is not part of the existing record. *See id.*; *see also* (Tr. at 251-3328 (medical records considered by the ALJ)). That being said, the evidence is immaterial because it does not "relate to the time period for which benefits were denied." *Suzbak*, 745 F.2d at 833; *see also Seney v. Colvin*, 185 F. Supp. 3d 475, 492 (D. Del. May 5, 2016), *report and recommendation adopted*,

---

[3]    Realistically, Plaintiff would not be challenging the ALJ's findings at step one (Plaintiff has no substantial gainful activity) or step four (Plaintiff has no past work). Plaintiff also does not appear to allege she has a condition presumed severe enough to qualify as a disability (step three). That leaves only whether impairments are severe (step two), residual functional capacity (within step four), and available work under the residual functional capacity (step five) as grounds for Plaintiff's appeal. The Court does not understand Plaintiff's passing comments about her impairments that the ALJ found non-severe (step two) (*see* D.I. 9 at 1) to be challenging that finding.

7

C.A. No. 15-251-RGA (D. Del. June 14, 2016), (D.I. 23).  Here, as evidenced by the ALJ's written

decision, that time period was date of onset (June 7, 2021) through the date of the ALJ's decision

(December 10, 2024).  (Tr. at 25).  The newly submitted 2025 discharge report concerns Plaintiff's

medical care received several months after that relevant period for disability benefits.  Because

Plaintiff's new evidence is not material, remand is not appropriate on this basis.  *Seney*, 185 F.

Supp. 3d at 492-93.  The Court now turns to the ALJ's decision.

**B.      Residual Functional Capacity**

The ALJ determined that Plaintiff had the residual functional capacity to perform light

work as defined in 20 C.F.R. § 404.1567(a) but with limitations on the frequency of certain types

of movement (kneeling, crawling, climbing, etc.) and prolonged standing (more than six hours per

eight-hour work day), while finding that Plaintiff lacked the capacity for other types of movement

(climbing ladders/ropes/scaffolding).   (Tr. at 19).   Although never stated (D.I. 9), Plaintiff

presumably disagrees with the ALJ's determination of Plaintiff's residual functional capacity.  In

his brief, the Commissioner argues that the ALJ's residual functional capacity finding was

supported by substantial evidence because the ALJ "reasonably relied upon a consultative

psychologist report, which noted such things as an intact memory and physical examination

observations confirming normal gait and strength."  (D.I. 12 at 1).

Specifically, after considering the entire record, the ALJ determined that:

> The claimant's pain management specialists prescribe her
> medication to manage chronic pain associated with her low back
> and neck (e.g. 41F).  The claimant reports her pain is better with
> physical therapy (e.g. 41F/8; see 6F).  On examinations, she has
> normal gait, normal stance and swing phase, with evidence of
> some decreased range of motion of the spine and right upper
> extremity (38F/2, 14; 41F/10, 23, 52, 73, 94).  She has normal
> gait and normal strength in the upper and lower extremities
> (33F/18, 26, 46, 72, 79, 90, 100, 117, 129; 38F/2).  At the
> consultative examination with Brook Jackson, NP, her gait to the

exam room was within normal limits (34F/4). She can tandem walk. She can walk on heels and toes, but loses balance on heels. She can hop. She can bend. She can squat. There are no assistive devices prescribed or in use. Straight leg raise was positive on the right in seated and supine positions, but negative on the left. She had no muscle spasm, atrophy, or joint deformity (34F/4). Motor function was 5/5 bilaterally in the upper and lower extremities (38F/4). There is no spasticity, rigidity or pain (38F/4). She has grossly normal range of motion to all joints. She has some stiffness to her back, her right wrist, and bilateral knees (38F/4). This supports a reduction in the claimant's residual functional capacity to a range of light work except: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour day; stand/walk six hours in an eight-hour day; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. The undersigned finds that the claimant can tolerate frequent exposure to extreme cold, extreme heat, humidity, vibration, and hazards such as machinery and heights, in part to reduce exacerbation of her chronic pain from environmental factors or safety risks.

(Tr. at 21).

Plaintiff rehashes her myriad of medical conditions in her opening brief to presumably argue that the ALJ erred by not considering them. (*See* D.I. 9). Although Plaintiff does not point to any particular medical evidence that the ALJ failed to consider, she does explain that her sciatic nerve "is always inflamed, making it hard for [her] to stand, walk or sit for a long time." (*Id.* at 2). The Court understands Plaintiff to be arguing that the ALJ's assessment of her residual ability to stand and walk was incorrect.

In reviewing the ALJ's decision, the Court may not re-weigh evidence; the Court's review is confined to determining if there is substantial evidence to support the ALJ's determination. *Podsaid v. Astrue*, C.A. No. 07-841-SLR-LPS, 2010 WL 662211, at *18 (D. Del. Feb. 22, 2010). It is the ALJ who makes the ultimate residual functional capacity determination – not this Court or a medical examiner. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). This requires the ALJ to indicate what evidence he rejects or discredits and why. *Burnett v.*

9

*Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). Here, the ALJ repeatedly stated that Plaintiff "generally has a normal gait throughout the record." (*See* Tr. at 22-23). In making that finding, the ALJ relied on the prior administrative medical findings of agency medical reviewer Dr. Joseph Michel. (*Id.* at 22). The ALJ found Dr. Michel's functional opinion "persuasive" because it was "consistent with the updated evidence in the record from other sources." (*Id.*). Although Dr. Michel did at times state that Plaintiff had a normal gait, his ultimate conclusion in his Findings of Fact and Analysis of the Evidence was that Plaintiff had a "mild antalgic gait" – commonly known as a limp. (*See* Tr. at 68). Therefore, Dr. Michel's conclusion is not "consistent" with Plaintiff having a normal gait. (Tr. at 22). Other medical evidence in the record could reasonably support finding that Plaintiff did not have a normal gait well into May 2023. (*See* Tr. at 448, 1048, 1743 & 1755). It thus appears that the ALJ failed to appreciate that Dr. Michel concluded that Plaintiff had an abnormal gait; this failure is particularly problematic considering that the ALJ relied on Dr. Michel to support the conclusion that Plaintiff *did* have a normal gait.

That being said, the record does also contain evidence supporting the ALJ's conclusion that Plaintiff has a normal gait, such as Dr. Vinod Kataria's administrative medical findings. (*See, e.g.*, Tr. at 80). And the ALJ can certainly reject one conflicting medical opinion in favor of another. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). But the ALJ "cannot reject evidence for no reason or for the wrong reason." *Id.* (cleaned up). Here, there is no indication *why* the ALJ rejected Dr. Michel's conclusion (and the relevant supporting evidence) that Plaintiff has mild antalgic gait. (*See* Tr. at 19-23 (residual functional capacity analysis)). In fact, it appears that the ALJ did not notice that there was a discrepancy at all. "In the absence of such an indication,

10

the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

Remanding for further consideration is thus warranted.[4] *See Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 120-21 (3d Cir. 2016) (reviewing court cannot provide a justification for the ALJ's decision in the first instance). As Plaintiff points out, her gait bears on the severity of her symptoms, which may affect her ability to stand or walk for a long time. (*See* D.I. 9 at 2). The ALJ's failure to mention and explain why he discounted evidence of her limp in favor of other evidence that she had a normal gait was erroneous. *See Burnett*, 220 F.3d at 121-22 (failing to consider report of "a mild limp" and subsequently finding the claimant able to perform light work necessitated remand); *Batdorf v. Colvin*, 206 F. Supp. 3d 1012, 1022-24 (M.D. Pa. 2016) (remanding after ALJ failed to note conflicting medical opinions concerning the plaintiff's gait and explain why one opinion was credited over another); *Wolfe v. Colvin*, 203 F. Supp. 3d 469, 482 (M.D. Pa. 2016) (remanding after ALJ discredited plaintiff's statements about the severity of her pain when objective medical evidence supported that she had an antalgic gait and other movement restrictions); *see also Cassidy v. Colvin*, C.A. No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("[T]hat the ALJ may have misinterpreted or misunderstood [one doctor's] findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

On remand, the ALJ should review the evidence of Plaintiff's gait and explain why he credited evidence of Plaintiff having a normal gait over the other evidence of record demonstrating

---

[4]    Because remand is warranted for at least this reason, the Court does not address other possible grounds for appeal in Plaintiff's brief. The ALJ is nonetheless free to revisit other aspects of his decision on remand if doing so would be appropriate.

Plaintiff's limp. *See Burnett*, 220 F.3d at 122 (remanding for the ALJ to explain why certain evidence was rejected); *see also Zuschlag v. Comm'r of Soc. Sec. Admin.*, C.A. No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

## IV.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's motion for summary judgment (D.I. 9) be GRANTED, the Commissioner's cross-motion for summary judgment (D.I. 11) be DENIED and the case be REMANDED for further proceedings consistent with this opinion.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated:  August 4, 2026

_____
UNITED STATES MAGISTRATE JUDGE

12